Case 2:17-cv-00033 Document 80 Filed on 07/28/17 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
July 28, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BIBBY OFFSHORE LIMITED, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-33 |
| | § | |
| EMAS CHIYODA SUBSEA, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING MOTION TO VACATE

Pending is Ocean Lion Shipping Ltd.'s ("Ocean Lion") Motion to Vacate. (D.E. 64). The Motion is **DENIED without prejudice**.

This case arises from a maritime contract dispute between Plaintiff Bibby Offshore Limited ("Bibby") and Emas Chiyoda Subsea, Inc. ("EMAS").[1] (D.E. 1 and 43).[2] Bibby moved for and was granted a writ of attachment commanding the seizure of the M/V LEWEK EXPRESS ("the Vessel") pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims. (D.E. 47 and D.E. 43, Page 7).[3] In its Amended Verified

---

[1] This Court has jurisdiction over maritime claims pursuant to 28 U.S.C. § 1333.

[2] Bibby, it its Verified Complaint, asserted a Rule B *in personam* claim against EMAS for breach of contract. (D.E. 1). However, Plaintiff has voluntarily dismissed this claim against EMAS, now in bankruptcy, after filing an Amended Verified Complaint adding a Rule C *in rem* claim against the M/V LEWEK EXPRESS ("the Vessel"). (D.E. 43 and D.E. 70). The automatic stay was lifted in this matter after the Bibby was given leave by the bankruptcy court to voluntarily dismiss its Rule B *in personam* claim against EMAS and to pursue its Rule C *in rem* claim.

[3] Bibby also moved for and was granted the attachment of the M/V AMBASSADOR. (D.E. 48). However, this attachment was subsequently vacated on February 22, 2017 upon finding the requirements of Rule B had not been met because EMAS can be found with the Southern District of Texas. (D.E. 49).

Complaint, Bibby alleges it is entitled to a maritime lien against the Vessel for "necessaries." (D.E. 43). Ocean Lion,[4] making a restricted appearance as claimant and owner of the Vessel pursuant to Rule E(8) of the Supplemental Rules for Admiralty Or Maritime Claims,[5] asserts the arrest should be vacated as the services performed by Bibby were not "necessaries" and were not provided "to a vessel" pursuant to the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. § 31301 *et seq*.[6]

I.  BACKGROUND

BHP Billiton ("BHP") is currently developing, in at least three phases, an oil and gas field located off the coast of Trinidad and Tobago known as the Angostura field. There are three contracts involved in this matter related to the third phase of development, "the [overall] purpose of which was to install three subsea gas production wells and to connect those wells by a 12" subsea flow line to a Gas Export Platform installed during an earlier phase of development." (D.E. 43; D.E. 64-1, Page 2; D.E. 64-2, Pages 9-10; and D.E. 66, Page 3). The first is a contract between EMAS and BHP where EMAS agreed to perform

---

[4]Bibby asserts Ocean Lion, a Hong Kong holding company, is owned entirely by Ezra Holdings Limited ("Ezra"), which is a parent holding company of EMAS and various other corporations/entities. Bibby alleges, "Ezra is the alter ego of EMAS and so dominates and controls EMAS that the corporate veil of EMAS should be disregarded for purposes of ownership of the M/V LEWEK EXPRESS." (D.E. 43, Page 9).

[5]Rule E(8) provides, "An appearance to defend against an admiralty or maritime claim with respect to which there has been issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served."

[6]After the pending Motion to Vacate was filed, one intervenor complaint has been filed against the Vessel. (D.E. 72). Additionally, two additional parties now seek to intervene as well. (D.E. 75 and D.E. 78). Therefore, it is likely that any or all of these parties would seek to arrest the Vessel should the current arrest be vacated.

installation, tie-in and subsea work. (D.E. 43, D.E. 64-1, Page 4 and D.E. 64-2). The second is an Offshore Installation Services Agreement ("OISA") between Bibby Subsea ROV, LLC and EMAS where "Bibby Subsea ROV, LLC agreed to provide certain goods and services to EMAS, including the use of certain vessels owned and/or operated by Bibby Subsea ROV, LLC or a related or affiliated company." (D.E. 43, Page 4 and D.E. 64-3). Bibby was then nominated by Bibby Subsea ROV, LLC to perform work on its behalf under the OISA and a work order was signed between Bibby and EMAS. (D.E. 43, Page 4 and D.E. 64-2). In this work order, Bibby identifies the M/V BIBBY SAPPHIRE as the vessel performing the contracted diving and engineering work. (D.E. 64-2, Page 1, Paragraph 1 "Scope"). Bibby, as detailed in the work order, was to perform the following scope of work:

> The purpose of this document is to outline the scope of work (SOW) for the diving support of the BHP Angostura Phase 3 Development. Diving support operations will include: engineering, metrology, jacket prep working including cleaning, J-Tube and Riser Clamp Installation, J-Tube and Riser Installation, Riser Guard Installation, Spool Installation, Flexible Jumper Tie-In and any ancillary equipment associated with these operations in Trinidad at the GEP and ARIPO Jackets."[7] (D.E. 64-2, Page 10 and D.E. 66, Page 3).

The third contract is a sixty (60) month charter agreement where EMAS chartered the Vessel, a reeled pipe-lay vessel specially designed and equipped to safely lower flexible oil and gas pipelines to the seafloor, from Ocean Lion. (D.E. 64-4).

In its complaint, Bibby asserts it "provided the M/V BIBBY SAPPHIRE, as well as diving personnel, to perform the necessary installation, tie-in and subsea work that was being performed by EMAS and the M/V LEWEK EXPRESS. To perform the necessary

---

[7] In the work order, GEP is defined as "Gas Export Platform" and "ARIPO" is the Angostura Gas Project. (D.E. 64-2, Pages 9 and 11).

pipe-laying work in the BHP Angostura field offshore Trinidad, the M/V BIBBY SAPPHIRE and Bibby's diving personnel worked in conjunction with the M/V LEWEK EXPRESS such that she could perform her particular function. Without the M/V BIBBY SAPPHIRE and Bibby's diving personnel, the M/V LEWEK EXPRESS would not have been able to complete it scope of work...EMAS, as the owner, operator and/or charter, was authorized to, and did in fact, incur the necessaries provided by Bibby to the M/V LEWEK EXPRESS." (D.E. 43, Pages 5 and 7). Bibby further asserts that after providing these services, it issued invoices but never received full payment. (D.E. 43, Page 6). Bibby argues it is owed $14,710,495.25 for the work and services provided. (D.E. 43, Page 6).

## II.     LEGAL STANDARD

Once a defendant's property has been attached, the defendant can move to vacate the attachment under Rule E(4)(f) of the Supplemental Rules for Admiralty and Maritime Claims.[8] Rule E(4)(f) permits the Court to look beyond the complaint, consider evidentiary submissions by the parties, and to hold a hearing, if requested. *White Rosebay Shipping S.A. v. HNA Grp. Co. Ltd.*, No. 2:12-cv-96, 2013 WL 441014, at *3 (S.D. Tex. Feb. 5, 2013)(citations omitted). A ruling under Rule E(4)(f) is not intended to resolve the dispute between the parties, but "only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant." *Id.*

---

[8]Rule E(4)(f) provides in relevant part: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."

4 / 9

The parties dispute whether a probable cause or preponderance of the evidence standard applies.[9] Courts have held that at a Rule E(4)(f) hearing, a plaintiff must show reasonable grounds for the arrest and attachment and that it should be maintained. *Seatrade Grp. N.V. v. 6,785.5 Tons of Cement*, No. H-05-2771, 2005 WL 3878026, at *2 (S.D. Tex. Dec. 7, 2005)(citations omitted); *see also Vinmar Int'l Ltd. v. MT CLIPPER MAKISHIO*, No. H-09-3829, 2009 WL 6567104, at *1 (S.D. Tex. Dec. 9, 2009)(citations omitted). "The plaintiff must show by a preponderance of the evidence that it is entitled to a valid lien." *Id*. (citation omitted). "This requires the plaintiff to make a *prima facie* showing that it is entitled to the damages sought and secured by the arrest and attachment." *Id*. However, as previously found by this Court in *Olendorff*, whether a hearing and discovery have taken place should be taken into consideration regarding the applicable standard:

> Several district courts, including courts for the Southern District of Texas, have applied a preponderance of the evidence standard to Rule E motions to vacate *after providing the party asserting jurisdiction an opportunity for discovery and an evidentiary hearing.*
>
> Preponderance of the evidence is the level of proof required for Plaintiff to carry the day at trial. Thus, at some point, Plaintiff must prove the jurisdictional facts of its case by a preponderance of the evidence, either at the Rule E hearing or at trial. *While a plaintiff initially need only make a prima facie showing that a defendant is amenable to suit, when a district court permits jurisdictional discovery and conducts a full evidentiary hearing on the issue of jurisdiction, the plaintiff must then prove its jurisdictional facts by a preponderance of the evidence.*

*Olendorff Carriers GMBH & Co., Grand China Shipping (Hong Kong) Co., Ltd.*, No. 2:12-cv-74, 2013 WL 3937450, at *2 (S.D. Tex. July 30, 2013)(citations omitted)(emphasis

---

[9]Probable cause is less than a preponderance of the evidence, and it has been described as a "fair probability" that the asserted fact is true. *Naftomar Shipping and Trading Co. v. KMA Intern. S.A.*, No. V-11-2, 2011 WL 888951, at *2 (S.D. Tex. Mar. 10, 2011)(citation omitted).

added). Similar to the case at hand, this Court, in *White Rosebay*, limited its analysis to the allegations of the complaint as no post-attachment hearings, jurisdictional discovery or evidentiary hearings had taken place. *White Rosebay Shipping S.A. v. HNA Group Co. Ltd.*, No. 2:12-cv-96, 2013 WL 441014, at *3 (S.D. Tex. Feb. 5, 2013); *see also Olendorff*, 2013 WL 3937450, at *2. Based on the allegations of the complaint, this Court then concluded the plaintiff had pled sufficient facts to maintain the maritime attachment as the complaint provided reasonable grounds to proceed. *Id.* at 5. Similarly, in the present case, Ocean Lion does not request a post-attachment hearing and it opposes Bibby's request for jurisdictional discovery, asserting "[n]o amount of discovery will change the nature of necessaries, nor the legal requirement that necessaries be provided 'to a vessel' in order for a maritime lien to accrue…Bibby already possesses full knowledge of the services it provided; there are no 'supplemental facts' for Bibby to learn about the nature of its own claim through discovery." (D.E. 73, Page 5). Ocean Lion argues the complaint, even accepting all allegations as true, fails to state a valid prima facie claim for these reasons. Therefore, the undersigned has limited the following analysis to the allegations in the complaint.

### III. NECESSARIES TO A VESSEL

CIMLA establishes a maritime lien for "providing necessaries to a vessel on the order of the owner or a person authorized by the owner," unless the provider of the necessaries has waived its right to the lien. 46 U.S.C. § 31342 and 46 U.S.C. § 31305. A charterer is "presumed to have authority to procure necessaries for a vessel." 46 U.S.C. § 31341(a)(4)(B). "Necessaries" include "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). The person providing necessaries "(1) has a

maritime lien on the vessel; (2) may bring a civil action *in rem* to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel." 46 U.S.C. §31341(1)-(3). The lien "aris[es] in favor of the creditor by operation of law as security for a debt or claim…and grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." *Equilease Corp. v. M/V SAMPSON*, 793 F.2d 598, 602 (5th Cir. 1986)(citation omitted). "[T]o determine the validity of a maritime lien, courts must normally refer to statutory law or those liens that have been historically recognized in maritime law" as "[m]aritime liens are stricti juris and will not be extended by construction, analogy, or inference." *Liverpool and London S.S. Prot. And Indem. Ass'n Ltd. v. M/V ABRA*, 295 F.Supp.2d 674, 681 (M.D. La. 2003)(citing *Racal Survey U.S.A. v. M/V COUNT FLEET*, 231 F.3d 183, 192 (5th Cir. 2000)(citation omitted) and *Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV MV*, 199 F.3d 220, 224 (5th Cir. 1999)).

Maritime liens for necessaries "secure creditors who provide supplies which are necessary to keep the ship going." *Effjohn Int'l Cruise Holdings, Inc.*, 346 F.3d 552, 556 (5th Cir. 2003)(citation omitted). The definition of "necessaries" is particular to the vessel. *Equilease*, 793 F.2d at 602. The focus should be "on the utility of the claimed necessary to vessel operation." *Gulf Marine and Indus. Supplies, Inc. v. M/V GOLDEN PRINCE*, 230 F.3d 178, 180 (5th Cir. 2000)(citing *Equilease*, 792 F.2d at 604). Physical delivery to the vessel is not a requirement and "most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function" are considered necessaries. *Equilease*, 792 F.2d at 603 (citation omitted). "Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she

has been engaged," including "money, labor and skill, and personal services as well as materials." *Id*. (citation omitted).

In the complaint, Plaintiff has alleged sufficient facts that, if substantiated, would support this Court's *in rem* jurisdiction. One can reasonably infer the services provided by Bibby were in fact necessaries provided to the M/V LEWEK as Bibby alleges "the M/V BIBBY SAPPHIRE and Bibby's diving personnel worked in conjunction with the M/V LEWEK EXPRESS such that she could perform her particular function. Without the M/V BIBBY SAPPHIRE and Bibby's diving personnel, the M/V LEWEK EXPRESS would not have been able to complete its scope of work…The services provided by Bibby to the M/V LEWEK EXPRESS constitute necessaries under the Federal Maritime Lien Act…EMAS, as the owner, operator, and/or charter, was authorized to, and did in fact, incur the necessaries provided by Bibby to the M/V LEWEK EXPRESS." (D.E. 43, Pages 5 and 7).

While Ocean Lion asserts that Bibby performed solely underwater construction services which were "tangentially related [to the] pipe lay services" conducted by the M/V LEWEK EXPRESS, it is unclear to the undersigned the extent of the services provided by Bibby to the M/V LEWEK EXPRESS. To be clear, the undersigned is not making a final decision on whether Bibby provided services which qualify as necessaries. *White Rosebay*, 2013 WL 441014 at *5 (A ruling under Rule E(4)(f) is not intended to resolve the dispute between the parties, but "only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant.")(citation omitted). However, at this stage, the complaint provides reasonable grounds for concluding that Bibby provided necessary services to the M/V LEWEK EXPRESS with sufficient facts to maintain the

maritime attachment. The undersigned finds it is appropriate to give the parties a period of time to conduct discovery to determine the extent of the services provided by Bibby in relation to the M/V LEWEK EXPRESS. Given the automatic stay which was just recently lifted in this matter and the new intervenor complaints, a new scheduling order is appropriate. An amended scheduling order will be entered separately.[10]

ORDERED this 28th day of July, 2017.

Jason B. Libby
United States Magistrate Judge

---

[10] Ocean Lion alternatively argues Bibby waived any maritime lien against the Vessel. However, the undersigned finds Ocean Lion's waiver of lien argument is not sufficiently supported at this time. The clauses cited by Ocean Lion require Bibby, upon submitting a final invoice, to also submit a waiver of lien rights from Bibby and from each of Bibby's subcontractors, if any, and to pay all Bibby's obligations incurred in the performance of the agreed work when due to keep EMAS' property free and clear of all liens "arising out of Bibby's failure to make such payments." (D.E. 64-3, Page 8, Paragraph 6). As argued by Bibby, it does not appear to the undersigned that these clauses constitute an automatic waiver of any maritime lien against the Vessel. Rather, it appears the purpose of these provisions was to ensure Bibby paid any and all subcontractors who may later make a claim against EMAS or its property. Further, Ocean Lion has not provided any evidence that Bibby submitted this waiver.